# Davis *v.* Cook.

*Bill in Equity by Junior Mortgagee, for Redemption and Fore-closure of Mortgages.*

1. *Cross-bill; when allowed.*—A cross-bill is proper, and is allowed, whenever it is necessary to do complete justice between all the parties, and to adjust all the equities between them connected with the subject-matter of the original bill; and, though foreign matters can not be thus introduced, unless special circumstances are shown, such as insolvency, non-residence, &c., new issues in relation to the original matter may be brought forward.

2. *Same.*—As against the plaintiff in the original bill, it is not always necessary that the cross-bill should show any ground of equity, or ask any equitable relief. In *Andrews v. Hobson*, 23 Ala 239, "the language used is too broad," in saying that the cross-bill was properly dismissed because it sought no relief against the plaintiff in the original bill.

3. *When junior mortgagee may come into equity.*—A junior mortgagee may file a bill in equity against the mortgagor and the senior mortgagee, asking an account of the mortgage debts, and a sale of the property for the payment of the sums ascertained to be due on them; and he may offer in his bill to redeem from the senior mortgagee, and have the property sold for the satisfaction of the entire amount then due to him, or have the property sold for both debts, and the proceeds of sale first applied to the older mortgage.

4. *Cross-bill by mortgagor, setting up usury.*—Under such a bill by the junior mortgagee, the mortgagor may file a cross-bill, setting up usury in the first mortgage; and if, instead of filing a cross-bill proper, he sets up that defense in his answer, and asks that his answer may be held and treated as a cross-bill (Code, §§ 3801-04), and it is so treated by the parties and the court below, without objection on that account, this court will not consider whether it falls within the terms of the statute. (BRICKELL, C. J., *dissenting*, held that a cross-bill would not lie in such a case.)

APPEAL from the Chancery Court of Butler.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 27th November, 1875, by Mrs. Jane D. Massey, against Nathan B. Cook and J. Moses Davis, and alleged the following facts: That on the 20th March, 1873, Cook borrowed from complainant the

[Davis v. Cook.]

sum of $5,576, for which he gave her his promissory note, payable twelve months after date; and, to secure the payment of said note, he also executed to her a mortgage on a tract of land therein particularly described, which was dated the 22d March, 1873, and a copy of which was made an exhibit to the bill: That some partial payments of interest were made on this note, but the principal sum and a large amount of interest were still due and unpaid: "That one J. Moses Davis, who is a resident of Texas, pretends to hold some sort of lien, or other mortgage lien, which he pretends was executed on (to-wit) the 5th day of January, 1872, and which he pretends was executed and delivered to him by the said N. B. Cook to secure the payment of two promissory notes, made by the said Cook to the said Davis on said 5th January, 1872, one for $5,485.60, and the other for $1,316.34; but oratrix charges, on information which she deems perfectly reliable, that said notes, or all that is legally due thereon, has been fully paid off and discharged": "That notwithstanding said Davis pretends to claim of said Cook the said sums of $5,485.60 and $1,316.34, as stated in said notes and pretended mortgage; yet oratrix shows and charges, that said Cook never received from said Davis the said sums in said notes severally mentioned, but, on the contrary, never received from said Davis any money or property whatsoever, save and except" certain sums specified, with their respective dates, "making in all the receipts, both of money and property, the sum of $5,347.03": That on the 5th January, 1872, Cook executed and delivered to Davis his two promissory notes, one for $5,485.60, due twelve months after date, and purporting to be for moneys received, and the other for $1,316.34; "which last note was given solely and exclusively for usurious interest, at the rate of twenty-four per-cent. on said sum of $5.485.60, and is therefore absolutely void": That Cook has paid to said Davis, "on account of the moneys and cotton so borrowed of him, the following sums," specifying them, "making in all the sum of $5,358.05": "That if any right the said Davis has under his said mortgage, such right is inferior to that of oratrix under her said mortgage; and be that as it may, oratrix hereby proposes, if anything shall be shown to be due and payable on his said mortgage, oratrix hereby proposes to pay off and discharge the same, and insists that the said lands be sold, and that the proceeds of such sale be applied as in equity and good conscience shall be deemed right."

The prayer of the bill was, "that an account be taken, under and by the directions of this honorable court, of the amount due oratrix on her said note and mortgage, including

principal and interest thereon; and that said Cook be de-
creed to pay and satisfy to your oratrix what shall appear to
be due and owing to her on the taking of said account, by
a short day to be appointed by this honorable court, together
with her costs; and, in default thereof, that said N. B. Cook
and all persons claiming under him may be absolutely barred
and foreclosed of and from all equity of redemption or claim
in and to said mortgaged premises, and every part thereof,
and may deliver over to your oratrix all deeds, writings, and
documents whatsoever, in his custody or possession, relating
to said mortgaged premises; and that the said J. Moses
Davis be compelled to deliver up his said mortgage, or pre-
tended mortgage, to be can.elled, or otherwise disposed of
as this honorable court shall determine and adjudge; and
that said mortgaged premises be sold by decree of this
court, and the proceeds of such sale be applied, first, to the
payment of what shall be ascertained to be due to your ora-
trix, on her said mortgage debt, and her costs; and if in any
thing your oratrix has mistaken her remedy," then she
prayed for such other and further relief as the nature of her
case required.

An answer to the bill was filed by Davis, insisting on the
validity and priority of his mortgage; admitting the charge
of illegal interest in his transactions with Cook, but denying
that this rendered the note void, " or that it is even voidable
by complainant, in this or any other proceeding "; denying
the correctness of the alleged partial payments to him, and
alleging that a large balance was still due and unpaid; alleg-
ing, also, that Cook had surrendered the possession of the
premises to him under his mortgage, and he had rented them
out to D. G. Dunkiin, who was in possession when the bill
was filed; also, that on the 18th January, 1876, before pro-
cess in this cause had been served on him, he sold the prem-
ises under a power of sale contained in his mortgage, and
one Matthew P. Davis became the purchaser at the sale;
that he executed a conveyance to said M. P. Davis, and
placed him in possession, and Dunklin attorned to him as
his landlord; and he insisted that this sale operated a fore-
closure of his mortgage, and a divestiture of all complain-
ant's title or interest in the premises, unless she might claim
to be subrogated to the mortgagor's statutory right of re-
demption. He incorporated in his answer a demurrer to the
bill for want of equity, because the complainant could not
take advantage of usury in his mortgage, and because she did
not pay or tender the amount still due to him on his debt.

An answer to the bill was filed by Cook, admitting all of
its allegations to be " strictly true; " and he prayed that his

answer might be taken as a cross-bill, that Mrs. Massey and Davis be made defendants thereto, and required to answer it; also, " that the said J. M. Davis be compelled to produce the notes and mortgage which he holds against this defendant, and that the same be cancelled, or otherwise disposed of, as may seem legal and proper to this honorable court," and for other and further relief under the general prayer. He also alleged that the amount due to Davis on his mortgage debt was not more than $500, and paid that amount into court, offering to pay any other balance that might be found due on the statement of the account, The cross-bill was afterwards amended, alleging that Davis had made a pretended sale under his mortgage, since the filing of the original bill in the cause; and that M. P. Davis, who was said to have become the purchaser at that sale, was a brother of said J. M. Davis, and had paid nothing on his purchase; and it was prayed that he be made a party defendant to the cross-bill. The allegation as to the amount due was also amended, by striking out the averment as to the $500, and alleging " that there is now due on said mortgage debt not one cent, but the same is fully paid off and discharged, except, perhaps, a small amount of usurious interest."

An answer to the cross-bill was filed by J. M. Davis, repeating the allegations of his answer to the original bill; admitting the charge of usury, but alleging that there was still a large balance due him, and that Cook was insolvent; asserting the validity and regularity of the sale under his mortgage, and admitting that M. P. Davis had paid nothing on his purchase. He also demurred to the cross-bill, and assigned the following as grounds of demurrer: " 1st, because it sets up matters not pertinent to the original bill; 2d, because it seeks no relief against the complainant in the original bill; 3d, because it seeks only relief from usurious interest as against this defendant, for the sole benefit of the complainant in the original bill; 4th, because the original bill is without equity as against this defendant; 5th, because said cross-bill shows that the equity of redemption of said Cook was foreclosed by a sale of the mortgaged premises under the power therein contained, and a deed made to the purchaser at the sale, before said cross-bill was filed, and alleges no sufficient ground for setting aside said sale; 6th, because said cross-bill does not allege such a state of facts as will entitle said Cook to any relief whatever in this court.". An answer to the cross-bill was also filed by M. P. Davis, setting up his purchase at the mortgage sale, alleging its regularity and validity, and admitting that he had paid no part of the purchase-money; and he demurred to the cross-

[Davis v. Cook.]

bill, on the following grounds: "1st, because this defendant is not a proper party thereto ; 2d, because it does not allege any facts or circumstances which will authorize any decree whatever against this defendant; 3d, because it seeks no relief against the complainant in the original bill."

The chancellor overruled the demurrer to the original bill, and also the demurrers to the cross-bill; and the cause being submitted on the bill and answers, and on the cross-bill and answers thereto, he rendered a decree, holding—1st, that the mortgage to J. M. Davis was usurious ; 2d, that the plea of usury might be set up by Cook i_ this suit; 3d, that M. P. Davis, having taken the property, under his purchase at the mortgage sale, in payment of an antecedent debt due to him by J. M. Davis, could not claim protection as a *bona fide* purchaser, and the plea of usury might be set up against him ; and, 4th, that the complainant in the original bill was entitled to relief, but the lien of her mortgage was subordinate to that of Davis ; and he therefore ordered a reference to the register as master, to take and state an account of both the mortgage debts. At the next term, the register's report being corrected and confirmed, by which it appeared that the amount due to J. M. Davis was $510.96, and the amount due to the complainant $6,578.20, the chancellor rendered a final decree, setting aside the sale under the mortgage to Davis, and ordering a sale of the property by the register, and the application of the proceeds of sale to the mortgage debts (first allowing Davis the $500 paid into court by Cook), and the residue, if any, to be paid to Cook.

From this decree, J. M. Davis and M. P. Davis both appeal, and here separately assign as error the overruling of their respective demurrers, the decree of reference, and the final decree; the assignments by J. M. Davis being eighteen in number, and those by M. P. Davis six.

HERBERT & BUELL, for appellant.—Usury is a personal defense, which can only be set up by the mortgagor.—*Baskins v. Calhoun*, 45 Ala. 582 ; *Fenno v. Sayre*, 3 Ala. 458; *Cain v. Gimon*, 36 Ala. 168 ; *McGuire v. VanPelt*, 55 Ala. 344 ; *Powell v. Hunt*, 11 Iowa, 430, and authorities cited. The sale by Davis, under the power in his mortgage, was a foreclosure, and destroyed the equity of redemption; and it was afterwards too late to set up the usury.—*McGuire v. VanPelt*, 55 Ala. 344; 2 Jones on Mortgages, §§ 646, 1797. The pendency of Mrs. Massey's bill was no obstacle to a sale under the first mortgage.—*Rhodes v. Buckland*, 16 Beavan ; Jones on Mortgages, § 1799. The necessary effect of the chancellor's decree is to allow usury to be set up, for the benefit of Massey, after the mortgagor had parted with the equity of redemption, and

[Davis v. Cook.]

had lost all right to set it up for himself. The bill and cross-bill, each, allege usury in the mortgage to Davis, and that is the only matter in the bill as to which relief is asked ; and yet the chancellor granted relief as to an item of $800, on the ground of mistake. If such mistake had been proved, it was outside of the allegations of the bill, and no relief could be granted on account of it, without proper amendments putting it in issue.—*Henderson v. Huey*, 15 Ala. 275 ; *Levert v. Redwood*, 9 Porter, 79 ; *Land v. Cowan*, 19 Ala. 743 ; cases cited in 1 Brickell's Digest, 743, §§ 1538-9.

GAMBLE & BOLLING, and J. C. RICHARDSON, *contra*.—The original bill is not a bill for redemption, but for a foreclosure of the second mortgage, making the mortgagor and first mortgagee parties, and asking an account.—*Cullum v. Erwin*, 4 Ala. 452. The cross-bill was properly filed, and it was not necessary to show any equity as against Mrs. Massey, or to ask any relief against her.—*Nelson & Hatch v. Dunn*, 15 Ala. 501 ; *Continental Life Ins. Co. v. Webb*, 54 Ala. 688. Although a mere stranger can not be heard to allege usury in the mortgage debt, it is now settled, by a great preponderance of the authorities, that it may be set up by a person who has succeeded to the estate of the mortgagor.—1 Jones on Mortgages, § 664 ; 1 Hill. Mortgages, 599 ; *Pearsall v. Kingsland*, 3 Edw. Ch. 195 ; *Carew v. Kelly*, 59 Barbour, 239 ; *Thompson v. Van Vechten*, 27 N. Y. 568 ; *Dix v. Van Wyck*, 2 Hill, N. Y. 481 ; *Green v. Kemp*, 13 Mass. 515 ; 15 Mass. 96, 103 ; *Gunnison v. Gregg*, 20 N. H. 100 ; *Shufelt v. Schufelt*, 9 Paige, 137 ; 44 N. Y. 626 ; *Bullard v. Raynor*, 30 N. Y. 197 ; *Banks v. McClellan*, 24 Md. 62 ; 1 Md. Ch. 127 ; 32 Miss. 142 ; *Ferris v. Crawford*, 2 Denio, 598 ; *Stephens v. Muir*, 8 Indiana, 352 ; *Wright v. Bundy*, 11 Ind. 398 ; *Waterman v. Curtis*, 26 Conn. 241 ; *Greene v. Tyler*, 39 Penn. St. 361. M. P. Davis paid nothing on his purchase at the mortgage sale, and is not entitled to protection. The sale was made after the filing of the bill, and after publication against Davis ; and although he alleges that process had not then been served on him, he does not deny actual notice of the pendency of the suit.

STONE, J.—" A cross-bill is a bill brought by a defendant against a plaintiff, or other parties in a former bill depending, touching the matter in question in that bill. A bill of this kind is usually brought to obtain a necessary discovery, or full relief to all parties. It frequently happens, and particularly if any question arises between two defendants to a bill, that the court can not make a complete decree without a cross-bill or cross-bills, to bring every matter in dispute

[Davis v. Cook.]

completely before the court, litigated by the proper parties, and upon proper proofs. In this case, it becomes necessary for some or one of the defendants to the original bill to file a bill against the plaintiff and other defendants in that bill, or some of them, and bring the litigated point properly before the court. . . . But a cross-bill being generally considered as a defense, or as a proceeding to procure a complete determination of a matter already in litigation in the court, the plaintiff is not, at least as against the plaintiff in the original bill, obliged to show any ground of equity to support the jurisdiction of the court."—Mitf. Eq. Pleading, marg. pages 80–1.

It will be seen that, under this high authority, the subject of the cross-bill must be a matter in question in the original bill. In Tyler's rendering of this work —Mitford & Tyler's Pleadings and Practice in Equity, 178–9—the language above is adopted without change. The same principle, with language slightly changed, is found in Story's Equity Pleadings, § 389, and in 2 Daniell's Chancery Practice, 1550. The latter author, speaking on the subject of filing cross-bills, says: "This most commonly happens, where persons in opposite interests are co-defendants; so that the court can not determine their opposite interests upon the bill already filed, and the determination of their interests is yet necessary to a complete decree upon the subject-matter of the suit."

In *Hubbard v. Turner*, 2 McL. 519–539, the court said: " A cross-bill is filed, to bring more fully before the court a subject-matter connected with the case made in the bill, and which is necessary to a determination of the controversy. The necessity of a cross-bill may arise, as well between two defendants, as between one or more defendants and the complainant."

In *Elliott v. Pell*, 1 Paige, 263–8, it is said: "It is the settled law of this court, that a decree between co-defendants, grounded upon the pleadings and proofs between the complainant and defendants, may be made; and it is the constant practice of the court to do so, to prevent multiplicity of suits. But such decree between co-defendants, to be binding upon them, must be founded upon, and connected with the subject-matter in litigation between the complainant and one or more of the defendants."—See, also, *Underhill v. Van Cortlandt*, 2 Johns. Ch. 339.

In *May v. Armstrong*, 3 J. J. Mar. 260, in margin, the court said: " A cross-bill must be confined to the subject-matter of the bill. An entire departure from it is not admissible. If a bill is filed for a certain purpose, the defendant to the

bill can not, by any cross-bill, bring into litigation in that suit all causes of action which he may have against the complainant, unless there exist some special circumstances, such as insolvency, non-residence, &c., which would render it necessary in order to avoid irreparable injury. Thus, if a bill be filed for specific execution of a contract for land, the defendant can not, by way of cross-bill, bring into litigation a fraud practiced on him by the complainant in swapping horses, or a debt due by the complainant, unless connected with the contract concerning the land, sought to be enforced. The cross-bill must relate exclusively to the subject-matter of the bill and things connected therewith, and foreign matter can not be introduced, unless under special circumstances." This is what we understand is implied in the phrase "subject-matter of the bill." See, also, *Tate v. Evans*, 54 Ala. 16.

In *Cullum v. Erwin*, 4 Ala. 452, 461, this court said : " A cross-bill is necessary against co-defendants, where they have opposite claims, which the court can not determine upon in the bill already filed, and where the determination of such clashing interests is still necessary to a complete decree upon the subject-matter of the suit." In *Nelson v. Dunn*, 15 Ala. 501, this court said : "It is true the allegations of the cross-bill must relate to the subject-matter in controversy in the original bill; but the rule does not, as is supposed by the counsel, restrict its office so as to confine it to the issues in the original cause."

This court, in *Andrews v. Hobson*, 23 Ala. 219, 239, said : "On this cross-bill, no relief is sought against the complainant in the original bill; nor would its allegations justify the court in granting any. Under these circumstances, it can not be allowed to stand as a cross-bill, and was properly dismissed by the chancellor." If it be meant to affirm that, because no relief was sought against the complainant, by direct decree against him, the cross-bill was properly dismissed, we apprehend the language is too broad. There are many cases, where a complainant has a clear, if not common right of recovery against two or more defendants, and yet, as between the defendants, there exist priorities of burden and liability, which, while they do not gainsay complainant's common right, yet show that one defendant, or that part of the subject-matter of the suit for which he is liable, must be first exhausted, before the other can be called on to pay. In cases of this sort, a cross-bill by one or more defendants is proper, and is the usual remedy.—*Coster v. Bank of Georgia*, 24 Ala. 37 ; *Pearson v. Darrington*, 32 Ala. 227 ; *Cullum v. Erwin*, 4 Ala. 452. But, in the case of *Andrews v. Hobson*,

the court said : "Much the larger portion of the charges
and allegations which it" [the cross-bill] "contains, have no
connection whatever with the matter involved in the original
suit." To the extent that this remark was true, the cross-
bill should not have been allowed, and was properly dis-
missed under all the authorities. We agree that, in the
absence of special circumstances, the cross-bill can bring
forward no new subject-matter, not presented in the original
bill. It can, however, and usually does, raise new issues
relating to that subject-matter; may present equities relat-
ing to the subject-matter, which arise between co-defendants,
but which are not shown by the original bill, and, generally,
may be resorted to, to secure such moulding or modification
of complainant's relief, as to secure full relief to all parties.

The defendant, Nathan B. Cook, complainant in the cross-
bill, made, first, a mortgage to Davis, conveying his interest
in a tract of land, to secure a debt for money borrowed.
He subsequently conveyed his interest in the same lands to
Mrs. Massey, to secure a debt for money borrowed from her.
Mrs. Massey filed an original bill, setting up her mortgage,
and the debt secured thereby. Davis and Cook are made
defendants. She charges in her bill that Davis "pretends
to hold some sort of lien, or other mortgage lien," on said
lands ; "but oratrix charges, on information which she
deems perfectly reliable, that the said notes, or all that is
legally due thereon, has been fully paid off and discharged."
Her bill then goes on to show what sums of money Cook
actually received from Davis, and alleges certain payments
made by Cook to Davis; and charges usurious interest in
the notes made by Cook to Davis. The 11th section of Mrs.
Massey's bill is in the following language : " Oratrix further
shows, that if any right the said J. Moses Davis has under his
said mortgage, such right is inferior to that of oratrix under
her said mortgage ; and be that as it may, oratrix hereby
proposes that, if anything shall be shown to be due and pay-
able on his said mortgage, oratrix hereby proposes to pay
off and discharge the same, and most respectfully insists
that the said described land be sold, and that the proceeds
of such sale be applied as in equity and good conscience
shall be deemed right." The prayer, in one part, is for a
strict foreclosure, but it contains also this clause : "And
that said mortgaged premises be sold by decree of this
honorable court, and the proceeds of such sale be applied,
first, to the payment of what shall be ascertained to be due
your oratrix on her said mortgage debt, and her costs."
There is, also, a prayer for general relief.

Mrs. Massey's bill has some of the features of a bill to

40)

redeem from Davis, if anything be due him; but its unmistakable purpose, whether Mrs. Massey redeemed or not, was and is that the property be sold, and that the proceeds of sale be applied as in equity and good conscience shall be deemed right." The purpose of the bill manifestly was, to sell the property under the decree to be rendered. If the balance due to Davis, if any, should be first paid by Mrs. Massey, then, she would step into his shoes, and the proceeds of sale would be applied, first, to the Davis claim as thus paid, and next to the mortgage debt to Mrs. Massey. Or, if she did not redeem from Davis, then the proceeds of sale would be applied, first, to Davis' mortgage, and next to Mrs. Massey's.

In *Cullum v. Erwin*, 4 Ala. 452, this court said: " Where no obstacle exists to stating an account between the mortgagor and first mortgagee, the subsequent mortgagee may file his bill to foreclose, and have an account taken of the amount due on both mortgages, making all who have an interest parties, and obtain a decree for the sale of the property." This is precisely what was done in this case. Under each aspect of the bill, the mortgaged premises were to be sold. If under both mortgages, and without redemption by Mrs. Massey, then the first proceeds would go to Davis, to the extent of the unpaid mortgage debt to him; and next, the proceeds would go to Mrs. Massey, to the extent of her mortgage claim. If she first redeemed, then the proceeds would go to her, to the extent of both claims. In either event, the surplus, should there be any, would be the property of defendant Cook. He was directly and deeply interested in having the account of his indebtedness to Davis adjusted on a proper basis. The less he owed to Davis, the larger would be the *residuum* left, to be applied to the claim of Mrs. Massey; and if the proceeds should not be enough to pay both demands, whatever was saved in the settlement with Davis, would be added to the sum paid to Mrs. Massey, and thus leave a smaller unpaid balance due from Cook to her. So, if there should be a *residuum* after paying both demands, whatever was deducted from Davis' claim, would go to augment the surplus, which would go to Cook.

What is the subject-matter of Mrs. Massey's original bill in this case? It is the mortgage interest of Davis and Mrs. Massey under their several mortgages, and the ultimate equity of redemption still retained by Cook, in the lands described in the pleadings. To a bill to foreclose these mortgages, Cook is a necessary party; necessary, because he has the right to be heard in stating the account against him, and because he still has an equitable interest in the

[Davis v. Cook.]

lands. That interest—his equity of redemption—can not be
barred or foreclosed, without making him a party. Why
make him a party? That he may controvert the alleged
mortgage debt. If there is no debt, there is no mortgage.
No one would deny that, in such a suit as this, Cook would
have the right to put either or both of the alleged mortgage
debts in issue, and to introduce proof of payment of one or
both. Now, usury is a defense; a defense against the claim
set up in the older of the two mortgages. It is a personal
defense, which Cook alone can make.—2 Brick. Dig. 128,
§ 122. If pleaded and proved, it shows that Cook owed
Davis less than on the face of the papers he appeared to
owe him. It was not foreign to the subject-matter of the
suit—introduced nothing relating to any transaction other
than that shown in the original bill, but only raised new
issues on the subject-matter presented in, and made the
foundation of the original bill. It was a proper subject for
a cross-bill by N. B. Cook.

The defendant, Cook, did not file a cross-bill proper in this
case. He embodied in his answer what he here relies on as
a cross-bill. In substance, it is very full in averments of
fact, stated as facts, going to show usury, and the extent of
it, in the notes secured by the Davis mortgage. It makes
Davis and Mrs. Massey parties, prays process, and for relief.
It sets forth a stated account, showing and averring that less
than five hundred dollars is due to Davis, and tenders that
sum to him, and brings it into court. The statutes relied on
as authorizing this form of defense, are found in the Code of
1876, and are as follows:

"3801. The defendant may obtain relief against the com-
plainant, for any cause connected with, or growing out of the
subject-matter of the bill, by alleging in his answer, and as a
part thereof, the facts upon which such relief is prayed, and
require the complainant to answer the same upon oath."

"3802. The matter thus put in issue must be considered in
the nature of a cross-bill, and be heard at the same time as
the original bill."

"3803. The defendent may waive the answer of the com-
plainant to such new matter being made upon oath," &c.

"3804. The complainant must file his answer to such new
matter, under the rules and regulations provided in this title
for the answers of defendants to original bills."

It will be observed that this system, in its letter, provides
for relief against the complainant, and makes no provision
for relief against a co-defendant. Whether we should con-
strue these sections strictly, as introductive of a new stat-
utory remedy, or liberally, as being remedial in their purpose

and spirit, we consider it unnecessary to inquire in this case. It was treated as a cross-bill in the court below, and was answered as such; several grounds of demurrer were interposed to it, and none of them raised the question that the defense it sought to make could not be presented by converting the answer into a cross-bill. The answer admitted the usury charged. Testimony was taken, and the chancellor in his decree sustained the plea of usury. And the assignments of error here do not raise the question of Cook's right in this case to convert his answer into a cross-bill. We will not consider this question.—*McElhaney v. Gilleland*, 30 Ala. 183; 1 Brick. Dig. 779, §§ 91, 92; *Ib.* 777, § 52; *Ib.* 776, § 31.

M. P. Davis, the alleged purchaser at the mortgage sale of J. M. Davis, has paid nothing on his purchase. If not under the circumstances a trustee of the title for J. M. Davis, he has acquired no independent rights against either the complainant in the original bill, or the complainant in the cross-bill. The decree is affirmed.

BRICKELL, C. J. dissenting.